[Civ. No. 24726. First Dist., Div. Three. Oct. 3, 1968.]

VIRGINIA M. GIORGI et al., Plaintiffs and Respondents, v. PACIFIC GAS AND ELECTRIC COMPANY, Defendant and Appellant.

[And 6 other cases.]*

---

*People v. Pacific Gas and Electric Company, Civ. No. 24727; Geraldine A. St. Pierre v. Pacific Gas and Electric Company, Civ. No. 24728, Dorothy A. Rasch v. Pacific Gas and Electric Company, Civ. No. 24729; Kent N. Stoel v. Pacific Gas and Electric Company, Civ. No. 24730; Nina E. Foley v. Pacific Gas and Electric Company, Civ. No. 24731; and Roy E. Chapin v. Pacific Gas and Electric Company, Civ. No. 24732.

Richard H. Peterson, Richard A. Rafferty, Robert Ohlbach, Sedgwick, Detert, Moran & Arnold and John S. Howell for Defendant and Appellant.

Thomas C. Lynch, Attorney General, R. H. Connett and William A. Mayhew, Deputy Attorneys General, W. K. Stewart, Howell, Elson & Grogan, Henry M. Elson, Glickman & Nicholas, Ben M. Kochman, Nichols, Williams, Morgan, Digardi & Brookman and Eugene Morgan for Plaintiffs and Respondents.

DRAPER, P. J.—Seven actions, four for wrongful death, two for bodily injury and one by the state for fire suppression costs (Health & Saf. Code, § 13009) were consolidated for trial and appeal. All plaintiffs had judgment, and defendant appeals.

The actions arise out of a fire which occurred in the Sierra National Forest in Mariposa County. Both federal and state fire suppression personnel were summoned. All six individuals killed or injured in fighting the fire were federal employees, five in the forest service and one in the soil conservation service. All were required to fight forest fires as part of their duties, and were trained in such work.

Plaintiffs' theory, accepted by the jury, is that defendant's negligent maintenance of a pole and the wires thereon caused

the fire, and that this negligence renders defendant liable for the deaths and injuries which occurred when a sudden flare or turn of the fire, about half a mile from its point of origin and some 3½ hours after its start, trapped the six men. Defendant, as to these six individuals, contends that the ''fireman's rule'' bars recovery.

In referring to such a rule, some refinement of terms is required. One rule deals with the liability of an occupier of land to police, firemen and other officers who enter upon premises under a privilege bestowed by their official duties, and are injured by defects in the premises. There are differing views upon the issue. (See Annot., 86 A.L.R.2d 1205-1207-8; Rest. Torts, § 345; Note (1961) 47 Cornell L.Q. 119, Prosser, *Business Visitors and Invitees* (1942) 26 Minn.L.R. 573; Note (1937) 35 Mich. L.R. 1157.) These varying views, however, turn in some degree upon the distinctions among invitee, licensee and trespasser, and can have no application in California since abandonment of those distinctions (*Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561]). In any event, that rule could not apply on the facts here, since the injuries did not occur upon land occupied by defendant.

The ''fireman's rule'' here discussed, however, is that which negates liability to firemen by one whose negligence causes or contributes to the fire which in turn causes the death or injury of the fireman. This issue has not arisen in California. The only case cited by counsel (*Pennebaker* v. *San Joaquin Light & Power Co.*, 158 Cal. 579 [112 P. 459, 139 Am.St.Rep. 203, 31 L.R.A. N.S. 1099]) concerned death of a fireman who stepped upon a live wire in the burning building of a customer of defendant. Liability was asserted because defendant failed to cut off the electric current to that building. The reference to an occupier's duty to firemen (pp. 587-588) thus was wholly dictum and, moreover, does not deal with the rule we here consider.

Other jurisdictions are all but unanimous in denying recovery by an injured fireman from one whose sole connection with the injury is that his negligence caused the fire (e.g., *Lunt* v. *Post Printing & Publishing Co.* (1910) 48 Colo. 316, 332 [110 P. 203, 208, 21 Ann. Cas. 492, 30 L.R.A. N.S. 60]; *Netherton* v. *Arends* (1967) 81 Ill.App.2d 391 [225 N.E.2d 143]; *Buren* v. *Midwest Industries, Inc.* (1964) 380 S.W.2d 96, 97; *Aravanis* v. *Eisenberg* (1965) 237 Md. 242 [206 A.2d 148, 153]; *Wax* v. *Co-operative Refinery Assn.* (1951) 154

Neb. 805, 808-809 [49 N.W.2d 707, 708-709] ; *Sierra Pac. Power Co.* v. *Anderson* (1961) 77 Nev. 68 [358 P.2d 892, 894] ; *Clark* v. *Boston & M.R.R.* (1917) 78 N.H. 428 [101 A. 795, 797] ; *Krauth* v. *Geller* (1960) 31 N.J. 270 [157 A.2d 129, 130-131] ; *McGee* v. *Adams Paper & Twine Co.* (1966) 26 App.Div.2d 186 [271 N.Y.S.2d 698] affd. 20 N.Y.2d 921 [233 N.E.2d 289, 286 N.Y.S.2d 274] ; *Chesapeake & O. Ry. Co.* v. *Crouch* (1968) 208 Va. 602 [159 S.E.2d 650, 653-654] ). Text writers (2 Harper & Janes, Torts (1956) 1503 ; Fleming, An Introduction to the Law of Torts (1967) p. 114) and annotators (86 A.L.R.2d p. 1208) recognize the broad acceptance of the rule. We find but one case (*Houston Belt etc. Co.* v. *O'Leary* (1911) 136 S.W. 601) which, although perhaps distinguishable on its facts, arguably is to the contrary.

Plaintiffs seek to distinguish the case at bench on the ground that the cited decisions deal only with fires upon the occupier's land. The statement is inaccurate. A number of them (e.g., *Chesapeake & Ohio Ry.* v. *Crouch, supra,* 159 S.E. 2d 650 ; *Clark* v. *Boston & M. R. R., supra,* 101 A. 795) deal with fires which spread beyond the defendants' property, with the injury or death occurring on such separately owned land. In those instances where the fire remained on defendant's premises, there usually is discussion of the occupier's liability for defects in his premises. But the holdings of nonliability to firemen for negligent origination of the fire are not dicta. Rather, they deny the existence of a separate ground of liability, distinct from that of an occupier who maintains defective premises.

The case at bench cannot be distinguished upon the ground that the men here killed or injured were not paid firemen. Rather, their duties, for performance of which they were paid and had been trained, specifically included the fighting of fires. One was a fire crew foreman. Thus they do not fall within the ambit of those cases (*Haverstick* v. *Southern Pac. Co.,* 1 Cal.App.2d 605 [37 P.2d 146] [also distinguishable because it turned upon code provisions not here applicable] ; *Illinois Central R. R.* v. *Siler* (1907) 229 Ill. 390 [82 N.E. 362, 11 Ann. Cas. 368, 15 L.R.A. N.S. 819] ; *St. Louis etc. R. R. Co.* v. *Ginn* (1953) 264 P.2d 351) which permit recovery by an occupier acting in defense of his own property from a fire which, negligently caused, has spread to his land.

Thus, if the fireman's rule so widely followed elsewhere is to be applied in California, it would bar the recoveries of all

individual plaintiffs here. The question remains, however, whether the rule, never either adopted or rejected in this state, should now be accepted as California doctrine.

The rule is old. Many of the decisions rest it upon assumption of the risk, a doctrine not applicable, in its strict sense, under the present California doctrine on that subject (see *Vierra* v. *Fifth Ave. Rental Service* (1963) 60 Cal.2d 266 [32 Cal.Rptr. 193, 383 P.2d 777]; *Rogers* v. *Los Angeles Transit Line* (1955) 45 Cal.2d 414 [289 P.2d 226]). Many of the cases from other jurisdictions invoke the frequently criticized distinctions among trespasser, licensee and invitee, thus enveloping the discussions pertinent to our issue in a possible aura of outmoded antiquity. Few discuss the policy considerations which increasingly have become the determinant of tort liability in this and a number of other states. Hence our early reaction was that the fireman's rule was but an anachronism still extant only because of a somewhat myopic adherence to *stare decisis.*

But further study reveals a number of contrary considerations. Seven of the sampling of decisions cited above were decided in the past eight years. A number of these adopted the rule for the first time in the jurisdiction involved.

One of these (*Krauth* v. *Geller, supra,* 31 N.J. 270) is by the Supreme Court of New Jersey, generally recognized as being entirely modern in its approach to tort law. Chief Justice Weintraub, writing for the court, stated at page 130 that "[t]he question is ultimately one of public policy, and the answer must be distilled from the relevant factors involved upon an inquiry into what is fair and just."

He concludes (p. 131) "it is the fireman's business to deal with that very hazard and hence, perhaps by analogy to the contractor engaged as an expert to remedy dangerous situations, he cannot complain of negligence in the creation of the very occasion for his engagement. In terms of duty, it may be said there is none owed the fireman to exercise care so as not to require the special services for which he is trained and paid. Probably most fires are attributable to negligence, and in the final analysis the policy decision is that it would be too burdensome to charge all who carelessly cause or fail to prevent fires with the injuries suffered by the expert retained with public funds to deal with those inevitable, although negligently created, occurrences. Hence, for that risk, the fireman should receive appropriate compensation from the public he

serves, both in pay which reflects the hazard and in workmen's compensation benefits for the consequences of the inherent risks of the calling.''

We note that one policy consideration often referred to in modern tort law is the ''spreading of the risk.'' But, as perhaps inferred in *Krauth*, the reach of the tax collector is both broader and more persuasive than that of the premium taker. The employer here is the United States, with the broadest collection basis extant. Placing the risk upon the public body which employs the fireman, as suggested in *Krauth*, thus would spread the risk over the broadest base.

We note, too, the policy of efficient judicial administration. The great majority of fires doubtless are caused or contributed to by passive human negligence. Most fires of any consequence result in injury, happily many of them rather minor, to some firemen. Judicial determination of the cause of a fire, after its destruction has been wrought, presents difficult problems requiring lengthy trials.

What of obvious expansions of such a rule of liability if adopted? Would an ambulance driver, responding to a call to pick up victims of an automobile collision caused by negligence, be allowed recovery from the negligent driver in that first collision for injuries sustained by the speeding ambulance driver in an accident en route to the scene? What of an attendant or nurse in the contagious disease ward of a public hospital? Would he be permitted recovery for an illness contracted from a patient confined in that ward because of disease contracted through the patient's negligent exposure of himself to the infection which caused his own confinement?

■ We hold that a paid fireman has no cause of action against one whose passive negligence caused the fire in which he was injured. We do not deal with the arsonist or with one who prankishly or maliciously turns in a false alarm.

■ As to the state, however, its right of recovery is specifically provided for by statute (Health & Saf. Code, § 13009).

■ But appellant urges error in two instructions to the jury which would affect the state's recovery. In giving a conditional res ipsa loquitur instruction (BAJI 206, 206-A [Revised]), the court substituted the phrase ''pole-top fire'' for the ''accident-injury'' alternatives provided in the form. Since there was some evidence that a ''pole-top fire'' is one starting at the top of a pole because of electrical leakage, the contention is that this phrase took the issue of origin of the

fire from the jury. But the expression "pole-top fire" was also used, throughout the trial, to denote any fire at the top of a pole. There was no question that the top of defendant's pole burned. The contested fact issue throughout the trial was whether that fire started first, or whether a fire from the ground ignited the pole. In the context of the contested instruction itself, the other instructions, and the trial as a whole, it is clear that the jury could not have been misled in the sense now argued. Rather, the instruction clearly indicated the question to be whether defendant negligently maintained the pole and thus originated the fire.

■ Appellant attacks one other instruction. In it, the jury was told that while "forest fires may result from acts of God, such as lightning, it is also a matter of common knowledge that the instances of forest fires thus caused are few in comparison to the number which occur as a result of human conduct and activity, such as cigarettes and matches carelessly thrown and campfires improperly or not doused," and that "it is a matter of common knowledge that a forest fire does not ordinarily happen unless someone has been negligent." At best, the instruction but elucidates the obvious, and should not have been given. But it could not have the effect, now urged by appellant, of removing the issue of negligence from the jury. No expert who examined the scene attributed the origin of the fire to natural cause. Rather, the issue was whether the negligent cause was the pole of defendant or the carelessness of some camper, hiker or rider. We find no conceivable prejudice to defendant.

The judgments in favor of the individual plaintiffs are reversed, with direction to enter judgment for defendant. The judgment in favor of the state is affirmed. Each party shall bear his or its own costs on appeal.

Salsman, J., and Brown (H. C.), J., concurred.

A petition for a rehearing was denied November 1, 1968, and respondents' petition for a hearing by the Supreme Court was denied November 27, 1968. Tobriner, J., did not participate therein.