[Civ. No. 9666. Fourth Dist., Div. Two. Nov. 23, 1970.]

ALBERT P. SCOTT, Plaintiff and Respondent, v.
E. L. YEAGER CONSTRUCTION CO., INC., et al.,
Defendants and Appellants.

COUNSEL

King & Mussell, William W. Shaw, Swarner, Fitzgerald & Dougherty, H. M. Dougherty and Ray Lapica for Defendants and Appellants.

Dillon, Moore, Boyd & Robinson and Richard H. Robinson for Plaintiff and Respondent.

OPINION

**KAUFMAN, J.**—In this personal injury action, plaintiff had a verdict and recovered judgment in the amount of $15,000 against defendants E. L. Yeager Construction Company (hereinafter Yeager) and Southern California Gas Company (hereinafter Gas Company). Defendants appeal.

Although the Gas Company contends that there is no evidence of its negligence and both defendants contend that plaintiff was contributorily negligent and assumed the risk as a matter of law, the controlling issue is presented by defendants' contention that plaintiff's recovery is barred by the "fireman's rule."

### The Facts

Plaintiff was employed as chief of the Palm Desert Volunteer Fire Department by the State of California, Department of Conservation, Division of Forestry. He had special training in firefighting and was paid on the basis of the number of calls he actively participated in. On October 27, 1965 he was severely burned by the ignition of gas escaping from a gas main belonging to the Gas Company which had been ruptured by an employee of Yeager.

The County of Riverside had contracted with Yeager for the installation of curbs, gutters and street paving in the approximate area of the intersection of Frontage Road and Shadow Hills Drive in Palm Desert, an unincorporated area of Riverside County. Some years previously, the Gas Company had installed a 6-inch, high pressure gas line at or near the most southerly curb line of Frontage Road. The gas main was ruptured by an employee of Yeager, using a large skiploader to dig a trench or hole for the purpose of putting in posts at the end of Frontage Road on which aluminum barriers were to be constructed to indicate the end of the street. The original plan, cleared by the Gas Company, called for four postholes, but by agreement between the county and Yeager, the latter was allowed, without notice to the Gas Company, to substitute a type of barrier that had three postholes. As a

result of this change, the most southerly posthole was relocated to a point directly on top of the existing gas line.

There is ample evidence that Gas Company employees marked the location of the gas main and informed Yeager's employees of its location and cautioned them to exercise care in their work near the main. The evidence is also ample that Yeager's employees were negligent in disregarding the information supplied by the Gas Company.

The gas line was punctured at about 10:45 a.m. on October 27, 1965. Gas Company employees arrived immediately and began to try to repair the break. Two alternatives were available. The gas could be cut off or an attempt could be made to repair the pipe by the installation of a "Skinner" clamp. Such a clamp was already at the scene, a previous break had been successfully repaired in this manner, and the Gas Company employees decided to attempt repair by installation of the clamp. There were some 1,400 meters on the line serving 5,000 to 7,000 people, and if the gas was shut off, there was considerable danger of explosion in each of the households served by the line. The Gas Company employees had been working about three hours and had the clamp on the line and were tightening the nuts to draw it tight when ignition occurred from an unknown source. The Gas Company had summoned an employee from Riverside with equipment to install pressure fittings to make permanent repairs. Although this employee had not yet arrived when ignition occurred, these fittings were not necessary to the work of making temporary repairs.

Plaintiff received a call in his capacity as chief of the Palm Desert Volunteer Fire Department over his portable radio receiver at 10:59 a.m. He reported to the scene, arriving there about 11:03 a.m. He saw the gas escaping and dust being blown into the air, with various Gas Company employees and several units of equipment and apparatus parked in the area. He conferred with George Andy Herrick, another member of the Palm Desert Volunteer Fire Department, who was on duty that day. After ascertaining the situation, they proceeded to clear the area of bystanders and make certain that no passerby stopped on the nearby highway. Plaintiff was aware that there was a power line carrying 33,000 volts close by the break.

Plaintiff stayed on the scene an hour to an hour and a half and then returned to the fire station. Work on the repair of the pipe was going on at that time. After an hour at the station, Scott returned between 1:40 and 1:45 p.m. when he was called back by Herrick to re-start a stalled fire truck with jumper cables. It was parked a hundred feet from the gas main break.

After getting the fire engine started, plaintiff walked over to the site of the ruptured gas line to find out how much longer it would be until repair

would be completed. The work was nearly finished. As he walked away, he heard something or someone call and turned around. As he turned around he noticed that the gas was igniting and immediately headed for the ground. The ignition started some 40 to 50 feet in the air, to the northeast of the ruptured pipe. It was about 2:10 p.m. He suffered burns on his face, limbs and body and was taken by ambulance to Valley Memorial Hospital in Indio where he remained for treatment for six days and was then transferred to Beverly Glen Hospital in Los Angeles for further treatment for 22 days.

### The "Fireman's Rule"

Defendants contend that plaintiff's recovery is barred as a matter of law by the so-called "fireman's rule." They rely upon the case of *Giorgi* v. *Pacific Gas & Elec. Co.,* 266 Cal.App.2d 355 [72 Cal.Rptr. 119] in which this rule was adopted and applied for the first time in California. The court there held that ". . . a paid fireman has no cause of action against one whose passive negligence caused the fire in which he was injured."[1] (266 Cal.App.2d at p. 360.)

A petition for hearing in the California Supreme Court was denied in *Giorgi* November 27, 1968. In view of the fact that the court in *Giorgi* unequivocally rested its decision upon the "fireman's rule" and expressly recognized that the question had not previously been decided in California (266 Cal.App.2d at p. 357), and in view of the denial of hearing by the California Supreme Court and the absence of any Supreme Court decision to the contrary, we are constrained to follow the rule insofar as it is applicable to the case at bench. (*Fuller* v. *Standard Stations, Inc.,* 250 Cal.App.2d 687, 692-693 [58 Cal.Rptr. 792]; *Estate of Brissel,* 218 Cal.App.2d 841, 844 [32 Cal.Rptr. 458]; *Housing Authority* v. *Peters,* 120 Cal.App.2d 615, 616 [261 P.2d 561]; cf. *DiGenova* v. *State Board of Education,* 57 Cal.2d 167, 178 [18 Cal.Rptr. 369, 367 P.2d 865]; *Cole* v. *Rush,* 45 Cal.2d 345, 350-351 [289 P.2d 450, 54 A.L.R.2d 1137].) Plaintiff urges, however, that the rule does not apply to the facts of the case at bench for several reasons.

### A. *Injury did not occur on defendants' property.*

Plaintiff contends that the "fireman's rule" is limited to cases where the fireman is injured on property belonging to or occupied by the negligent actor and that it is not applicable where the fireman is injured while on the property of another in the course of protecting the other's property. There is little doubt that the rule originated in the land occupier cases. (Cf. 2

---

[1]In fairness to the trial judge, it should be noted that the decision in *Giorgi* was not made until October 3, 1968, several months after the conclusion of all proceedings in the trial court.

Harper & James, The Law of Torts (1956) 1501-1505; Annot. 86 A.L.R. 2d 1209-1221.) It is true, also, that many of the cases referred to by the court in *Giorgi* were land occupier cases (266 Cal.App.2d at pp. 357-358.) The court in *Giorgi*, however, recognized that California has abandoned the distinctions in the duties owed by a land occupier to invitees, licensees and trespassers. (266 Cal.App.2d at p. 357 [citing *Rowland* v. *Christian*, 69 Cal.2d 108 (70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496)].)

■ The rule of nonliability announced in *Giorgi* has modern bases (266 Cal.App.2d at pp. 359-360), and is not limited to injuries suffered by firemen on land belonging to or occupied by the defendant. In *Giorgi* the firemen were injured, some fatally, fighting a fire in the Sierra National Forest, which did not belong to and was not occupied by the defendant Pacific Gas & Electric Company. Nevertheless, the rule was announced and applied, and the very contention now made by plaintiff was there made and rejected. (*Giorgi* v. *Pacific Gas & Elec. Co.*, *supra*, 266 Cal.App.2d 355, 358.)

## B. *Fire v. Explosion.*

Plaintiff next contends that the "fireman's rule" is not applicable because he was injured by an explosion rather than a fire. In the first place, the record discloses that plaintiff was burned as a result of the ignition of the gas in mid-air. It is probable, therefore, that the incident is properly termed a fire rather than an explosion. (Cf. *New Hampshire Fire Ins. Co.* v. *Rupard*, 187 Ky. 671 [220 S.W. 538, 543].)

■ More importantly, the resolution of the significant policy considerations underlying the "fireman's rule" should not be made to depend on a technicality such as the distinction between a fire and an explosion. One of the bases most often articulated in the cases supporting the rule is one predicated on a concept of fairness. "[I]t is the fireman's business to deal with that very hazard and hence, . . . he cannot complain of negligence in the creation of the very occasion for his engagement. In terms of duty, it may be said there is none owed the fireman to exercise care so as not to require the special services for which he is trained and paid." (*Krauth* v. *Geller*, 31 N.J. 270 [157 A.2d 129, 131]; *Giorgi* v. *Pacific Gas & Elec. Co.*, *supra*, 266 Cal.App.2d 355, 359; *Buren* v. *Midwest Industries, Inc.* (Ky. 1964) 380 S.W.2d 96, 98.) Otherwise stated, the defendant is not liable for having negligently created the condition necessitating the fireman's presence. (*Buren* v. *Midwest Industries, Inc.*, *supra*, 380 S.W.2d at p. 97.) Looking to this reason for the rule, the pertinent inquiry is not whether the incident causing plaintiff's injury was a fire or explosion, but whether the negligently created risk which resulted in plaintiff's injury was the reason for his being at the scene in his professional capacity. We think there can be no question but that it was. The only reason that plaintiff was at the scene was the escap-

ing gas. Indeed, in response to defendants' contention that plaintiff assumed the risk, plaintiff asserts that it was his duty to be present because of the escaping gas. Surely, the greatest, if not the only, risk created by the escaping gas was the possibility that it would ignite.

### C. *Active v. Passive Negligence.*

The evidence indicates that Yeager was negligent in digging the posthole directly over the gas main in careless disregard of the information and warnings supplied by the Gas Company. It was plaintiff's theory that the Gas Company was negligent either in not shutting off the gas at once or in not having the proper equipment readily available for repair or in unreasonably delaying shutting off the gas. While we entertain considerable doubt as to the Gas Company's negligence, for purposes of decision we shall assume that the evidence supports the jury's implied determination that the Gas Company was negligent in one or more of these respects. Plaintiff contends that the "fireman's rule" does not apply, because defendants' negligence was "active" as opposed to "passive" negligence.

■ Clearly, Yeager's negligence would be classified as "active." The categorization of the Gas Company's negligence, if such there was, is more doubtful. (See Prosser, Law of Torts (3d ed.) pp. 334-335.) In any event, for the reasons set forth below, we decline to obfuscate the rule with this distinction.

In the first place, we are convinced that the distinction between active and passive negligence noted in some of the cases originated in the land occupier cases deriving from the rule in some of the jurisdictions that the land occupier owed to a licensee only the duty not to injure him by willful or wanton misconduct or by "active negligence." (See *Anderson* v. *Cinnamon,* 365 Mo. 304 [282 S.W.2d 445, 447, 449-450, 55 A.L.R.2d 516]; *Buren* v. *Midwest Industries, Inc., supra,* 380 S.W.2d 96, 97; 2 Harper & James, The Law of Torts, *supra,* 1504; Annot. 86 A.L.R.2d, *supra,* 1220-1221.) ■ The distinction between the duties owed to an invitee and a licensee has, of course, been abrogated in California. (*Rowland* v. *Christian, supra,* 69 Cal.2d 108; *Giorgi* v. *Pacific Gas & Elec. Co., supra,* 266 Cal. App.2d 355, 357.)

Secondly, the distinction between active and passive negligence frequently depends upon one's point of view; more often than not serves only to obscure the true considerations; and constitutes a somewhat less than useful tool in tort analysis. (Cf. *The Allocation of Loss Among Joint Tortfeasers,* 41 So.Cal.L.Rev. 728, 738; Prosser, Law of Torts (3d ed.) *supra,* p. 335.) The more recent cases actually considering the problem have rejected the distinction.

In *Buren* v. *Midwest Industries, Inc., supra,* the court found the rule to be ". . . that as a general rule the owner or occupant is not liable for having negligently created the condition necessitating the fireman's presence . . . but may be liable for failure to warn of unusual or hidden hazards, *for actively negligent conduct* and, in some jurisdictions, for statutory violations 'creating undue risks of injury beyond those inevitably involved in fire fighting.' " (380 S.W.2d at pp. 97-98. Italics added.) In a contention legally identical and factually analogous to that in the case at bench, the plaintiff in that case contended that the defendant's negligence was active rather than passive in that he unreasonably delayed in calling the fire department and attempted to extinguish the fire himself. Although the court found evidence to support such negligence, it rejected the contention, holding, ". . . on the ultimate question of liability there is no logical basis for distinguishing between negligence in this respect and negligence in creating the fire or in maintaining the premises in a fire-safe condition." (380 S.W.2d at p. 99.)

In *Aravanis* v. *Eisenberg,* 237 Md. 242 [206 A.2d 148], defendant's negligence consisted of knocking a tool off his workbench onto a jug of acetone which ignited. Said the court: "When a fire department is called to fight a blaze, the cause of the blaze is immaterial. It may be the result of actual negligence on the part of the property owner, such as the dropping of a lighted match, or of his negligence in the maintenance of his property, as in permitting a known defective condition of the wiring to remain uncorrected. In either case, if the fireman is injured by the flames or gases of the conflagration, apart from unusual factors operative after the fire has begun, he can not recover. Fighting the fire, however caused, is his occupation. Compensation for injuries sustained in the fulfillment of his duties, absent other circumstances, is the obligation of society." (206 A.2d at p. 153.)

It is true that in *Giorgi,* the court limited its holding to passive negligence. The opinion reads: "We hold that a paid fireman has no cause of action against one whose passive negligence caused the fire in which he was injured. We do not deal with the arsonist or with one who prankishly or maliciously turns in a false alarm." (266 Cal.App.2d at p. 360.) The use in *Giorgi* of the words "passive negligence" does not compel the conclusion, however, that the court meant to incorporate into the rule the active-passive negligence distinction. The negligence involved in *Giorgi* was the defendant's negligent maintenance of a power pole and wires (266 Cal.App.2d at p. 356), and, appropriately, the court limited its holding to the facts of the case it was deciding. Moreover, both the illustrations mentioned by the court on page 360 of the opinion and its statement that it did not deal with the arsonist or the false-alarmist, in juxtaposition to its

holding, indicates that the court meant only to indicate that a contrary result might be reached where the conduct of the defendant was intentional or amounted to willful misconduct. Significantly, the reference to the arsonist and false-alarmist is substantially similar to the language in *Krauth* v. *Geller, supra,* where, in discussing the issue of *wanton misconduct,* the court stated: "We are not concerned with the liability to a fireman of an arsonist or one who deliberately induces a false alarm." (157 A.2d at p. 132.)

■ Most importantly, we do not find the distinction between active and passive negligence pertinent to the policy considerations supporting the rule. In addition to the "fairness" basis for the rule previously discussed (the fireman cannot complain of negligence in the creation of the very occasion for his engagement), the court in *Giorgi* found the rule supported by two considerations of public policy: distribution of the cost and efficient administration of justice. With respect to the distribution of cost, the court said: "We note that one policy consideration often referred to in modern tort law is the 'spreading of the risk.' But, as perhaps inferred in *Krauth,* the reach of the tax collector is both broader and more persuasive than that of the premium taker. The employer here is the United States, with the broadest collection basis extant. Placing the risk upon the public body which employs the fireman, as suggested in *Krauth,* thus would spread the risk over the broadest base." (*Giorgi* v. *Pacific Gas & Elec. Co., supra,* 266 Cal.App.2d at p. 360; see also *Aravanis* v. *Eisenberg, supra,* 237 Md. 242 [206 A.2d 148, 153].) We note that plaintiff's employer is the State of California, and the reasoning of the *Giorgi* court in relation to the distribution of the cost would appear to be applicable also to the case at bench.

With respect to efficient judicial administration, the *Giorgi* court noted: "The great majority of fires doubtless are caused or contributed to by passive human negligence. Most fires of any consequence result in injury, happily many of them rather minor, to some firemen. Judicial determination of the cause of a fire, after its destruction has been wrought, presents difficult problems requiring lengthy trials." (*Giorgi* v. *Pacific Gas & Elec. Co., supra,* 266 Cal.App.2d 355, 360.)

If these are valid reasons for the rule, a distinction between active and passive negligence would be meaningless. In terms of distribution of the cost and the efficient administration of justice as discussed by the court in *Giorgi,* what difference does it make whether the negligence causing the fire consisted of the negligent maintenance of a power pole and lines, negligent operation of a skiploader or negligent failure to cut off gas?

■ In view of the reasons therefor, we are persuaded that a proper

statement of the rule is that where the defendant's negligence, whether active or passive, creates an apparent risk, which is of the type usually dealt with by firemen, and which is the cause of the fireman's presence, and which is the direct cause of the fireman's injury, the defendant is not liable to the fireman.

We need not and do not deal with situations involving intentional or willful or wanton misconduct, nor situations in which there is some hidden danger known to the defendant but not to the fireman, nor situations in which the fireman is injured as a result of some risk beyond those inevitably involved in firefighting. Neither do we deal with those situations in which the defendant's negligence occurred after the fireman arrived on the scene and materially enhanced the risk of harm or created a new risk of harm. None of those situations are presented by the case at bench. Here the risk of harm was readily apparent to all at the scene. Plaintiff observed the escaping gas and was aware of the power line nearby. The possibility that the gas would ignite was the very reason for plaintiff's presence. It may be important to note that the negligence of the Gas Company, if such there was, preceded and was responsible for plaintiff's presence at the moment of ignition. Although he had returned to the general area to restart a stalled fire truck, he walked over to the site of the rupture to find out how much longer it would be until repair was completed. If the gas were not still escaping and the Gas Company employees still working on the repair, there would have been no occasion for him to go over to the site of the break, and he would not have been injured.

It appears, therefore, that defendants' negligence created the very hazard necessitating plaintiff's presence, the very hazard he was paid and trained to deal with, and the very hazard resulting in his injury. Under the "fireman's rule" he cannot recover. (*Giorgi* v. *Pacific Gas & Elec. Co., supra,* 266 Cal.App.2d 355; *Buren* v. *Midwest Industries, Inc., supra,* 380 S.W. 2d 96; *Aravanis* v. *Eisenberg, supra,* 237 Md. 242 [206 A.2d 148]; *Krauth* v. *Geller,* 31 N.J. 270 [157 A.2d 129].)

There is no need to consider defendants' other contentions.

Judgment reversed.

Tamura, Acting P. J., and Kerrigan, J., concurred.