[Civ. No. 3253. Fifth Dist. Nov. 14. 1977.]

BILL FARMER et al., Plaintiffs and Appellants, v.
UNION OIL COMPANY, Defendant and Respondent;
STATE DEPARTMENT OF CONSERVATION,
Intervener and Appellant.

## Counsel

Ferrari & Cole, Angelo L. Ferrari and Thomas J. Tusan for Plaintiffs and Appellants.

T. Groezinger, James J. Vonk, George S. Bjornsen and Michael Bauernfeind for Intervener and Appellant.

McCormick, Barstow, Sheppard, Coyle & Wayte, Dudley W. Sheppard and Stephen J. Kane for Defendant and Respondent.

## OPINION

**FRANSON, J.**—We review the propriety of the trial court's order sustaining without leave to amend a general demurrer to appellants' complaint for personal injuries on the ground that appellants' action is barred by the "fireman's rule." This rule provides that a paid fireman has no cause of action against one whose negligence caused the fire in which he was injured. (*Giorgi* v. *Pacific Gas & Elec. Co.* (1968) 266 Cal.App.2d 355, 360 [72 Cal.Rptr. 119]; Anno. 86 A.L.R.2d 1209; see Comment, *An Examination of the California Fireman's Rule* (1975) 6 Pacific L.J. 660; see also 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 491, pp. 2753-2755.) The basis of the rule is that an owner or possessor of property is deemed to owe no duty of care to avoid the special services of a fireman.

Appellants allege they were employed as firemen by the Mid-Valley Fire Department on June 13, 1975, when they were called to extinguish a fire involving a gasoline tank truck owned by respondent Union Oil Company. The complaint alleges that respondent, as the owner and operator of the truck, and defendant Valley Kenworth Corporation, as a repairer of the truck, were negligent in that they improperly secured a muffler to the header pipe of the truck, causing the muffler to come loose, thereby severing the fuel lines of the truck and causing the fire. It was alleged that the defendants' negligence was the proximate cause of the fire to which appellants were summoned and the proximate cause of the injuries sustained by appellants while fighting the fire.

A complaint in intervention was filed by State Compensation Insurance Fund alleging that it had provided $18,216.41 in worker's compensation benefits to appellants and that it would be obligated to pay additional benefits to appellants thereby entitling it to be subrogated to the rights of the appellants against the defendants.

Defendant Valley Kenworth Corporation filed a general demurrer to appellants' complaint and to the amended complaint in intervention asserting that appellants' causes of action for negligence were barred by the fireman's rule. Respondent Union Oil Company joined in the demurrer. The demurrer was sustained without leave to amend.

Appellants filed a timely appeal;[1] however, on June 12, 1977, the appeal was dismissed as to the defendant Valley Kenworth

---

[1]While no appeal lies from an order sustaining a demurrer (Code of Civ. Proc.,

Corporation, leaving Union Oil Company as the remaining respondent in the appeal.

## Discussion

Appellants challenge the validity of the fireman's rule on two grounds: First, regardless of the Court of Appeal decisions in *Giorgi* v. *Pacific Gas & Elec. Co., supra,* 266 Cal.App.2d 355 and *Scott* v. *E. L. Yeager Constr. Co.* (1970) 12 Cal.App.3d 1190 [91 Cal.Rptr. 232] and the dicta of the Supreme Court in *Solgaard* v. *Guy F. Atkinson Co.* (1971) 6 Cal.3d 361 [99 Cal.Rptr. 29, 491 P.2d 821] upholding the rule, the rule must fall in the light of the Supreme Court's declaration in *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496] that under the mandate of Civil Code section 1714,[2] all persons are liable for injuries proximately caused to others by a failure to exercise reasonable care in the management of their property, absent statutory or strong policy reasons to the contrary. (*Id.,* at p. 112.) Appellants ask this court to declare the fireman's rule an anachronism for the reasons expressed in *Rowland* v. *Christian, supra.*

Second, assuming the fireman's rule is supportable on policy grounds even today, it nonetheless cannot be enforced against appellants because to do so would deprive them of the equal protection of the laws in that other public safety officers such as policemen and highway patrolmen are not subject to the fireman's rule. Appellants argue that policemen

---

§ 904.1), an appeal will lie from a judgment of dismissal which has been entered nunc pro tunc. Here, a judgment of dismissal was entered on September 30, 1977, and we treat the appeal of appellants Farmer and Nunlee as being from that judgment.

However, as to the intervener-appellant California State Department of Conservation, it is clear that the judgment of dismissal is not a final judgment inasmuch as there are two additional causes of action alleged in the complaint in intervention still pending in the trial court. (See *Mather* v. *Mather* (1936) 5 Cal.2d 617, 618 [55 P.2d 1174]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 47, pp. 4060-4062.) Where an intervener claims adversely to both of the original parties, its right to have the issues determined cannot be affected by a dismissal of the plaintiff's action. (See *Voyce* v. *Superior Court* (1942) 20 Cal.2d 479, 488 [127 P.2d 536]; *Poehlmann* v. *Kennedy* (1874) 48 Cal. 201; 37 Cal.Jur.2d, Parties, § 58, p. 403.) Thus, we must order a dismissal of the appeal filed by the California State Department of Conservation.

[2]Civil Code section 1714 provides in pertinent part: "Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself. . . ."

and other public safety officers are free to sue third parties in negligence for injuries incurred in the course of their official duties and that appellants must be accorded the same right.

For the reasons to be expressed, we hold that neither of appellants' contentions has merit.

It is well established in California that a fireman has no cause of action against one whose negligence caused the fire in which he was injured. In *Giorgi* v. *Pacific Gas & Elec. Co., supra,* 266 Cal.App.2d 355, four firefighters were killed and two were injured in fighting a fire. All were federal employees trained in firefighting work and were required to fight forest fires as part of their duties. Plaintiffs' theory in their wrongful death and bodily injury actions was that the defendant utility's negligent maintenance of an electric power pole and wires caused the fire, and that this negligence rendered defendant liable for the deaths and injuries which occurred when a fire trapped the six men.

In reversing a judgment for the plaintiffs, the *Giorgi* court first observed that other jurisdictions were all but unanimous in denying an injured fireman recovery from one whose sole connection with the injury is that his negligence caused the fire. (266 Cal.App.2d at p. 357.) The court quoted the Supreme Court of New Jersey as follows: " 'The question is ultimately one of public policy, and the answer must be distilled from the relevant factors involved upon an inquiry into what is fair and just. . . . [I]t is the fireman's business to deal with that very hazard and hence, perhaps by analogy to the contractor engaged as an expert to remedy dangerous situations, he cannot complain of negligence in the creation of the very occasion for his engagement. In terms of duty, it may be said there is none owed the fireman to exercise care so as not to require the special services for which he is trained and paid. Probably most fires are attributable to negligence, and in the final analysis the policy decision is that it would be too burdensome to charge all who carelessly cause or fail to prevent fires with the injuries suffered by the expert retained with public funds to deal with those inevitable, although negligently created, occurrences. Hence, for that risk, the fireman should receive appropriate compensation from the public he serves, both in pay which reflects the hazard and in workmen's compensation benefits for the consequences of the inherent risks of the calling.' " (*Krauth* v. *Geller* (1960) 31 N.J. 270 [157 A.2d 129, 130, 131]; *id.,* at pp. 359-360.)

The *Giorgi* court then made the following observations:

"We note that one policy consideration often referred to in modern tort law is the 'spreading of the risk.' But, . . . the reach of the tax collector is both broader and more persuasive than that of the premium taker. The employer here is the United States, with the broadest collection basis extant. Placing the risk upon the public body which employs the fireman, . . . thus would spread the risk over the broadest base.

"We note, too, the policy of efficient judicial administration. The great majority of fires doubtless are caused or contributed to by passive human negligence. More fires of any consequence result in injury, happily many of them rather minor, to some firemen. Judicial determination of the cause of a fire, after its destruction has been wrought, presents difficult problems requiring lengthy trials." (*Giorgi, supra,* at p. 360.)

*Giorgi* rejected the two historical bases for the fireman's rule: assumption of the risk by the fireman and the traditional distinctions among land occupiers, that is, the limited duty of care owed to a licensee. *Giorgi* correctly stated that the defense of assumption of the risk in its strict sense was unavailable in California (see *Vierra* v. *Fifth Avenue Rental Service* (1963) 60 Cal.2d 266 [32 Cal.Rptr. 193, 383 P.2d 777]), and the distinctions among land occupiers had been repudiated in *Rowland* v. *Christian, supra,* 69 Cal.2d 108, 118-119.

*Giorgi* concluded that a paid fireman has no cause of action against one whose passive negligence caused the fire in which he was injured. The court, however, expressly declined to deal with the arsonist or with one who deliberately turns in a false alarm. A petition for a hearing by the Supreme Court was denied in *Giorgi.*

In *Scott* v. *E. L. Yeager Constr. Co., supra,* 12 Cal.App.3d 1190, plaintiff, employed by the state as chief of a voluntary fire department, recovered judgment against a contractor and a gas company for severe personal injuries. He had been burned by the ignition of gas escaping from the gas company's main which had been ruptured by the contractor's employee. The Court of Appeal reversed the judgment, noting that defendants' negligence had created the very hazard necessitating plaintiff's presence at the scene of the accident, the very hazard plaintiff was paid and trained to handle, and the very hazard which resulted in his injury.

*Scott* took cognizance of the fact that in *Giorgi, supra,* the court "unequivocally rested its decision upon the 'fireman's rule' and expressly recognized that the question had not previously been decided in California . . . ." (*Scott, supra,* at p. 1194.) *Scott* then held that in view of the denial of the hearing by the California Supreme Court and in the absence of any contrary decision of that court, "we are constrained to follow the rule insofar as it is applicable to the case at bench." *(Id.) Scott* discarded *Giorgi's* implied active-passive negligence dichotomy and ruled that a defendant is not liable to a fireman where the defendant's negligence, whether active or passive, created an apparent risk of the type usually dealt with by firemen, causing the fireman's presence and directly causing the injury. (12 Cal.App.3d at pp. 1198-1199.)

In *Solgaard* v. *Guy F. Atkinson Co., supra,* 6 Cal.3d 361, 369, our Supreme Court addressed the fireman's rule by way of dicta. In that case a physician who had agreed to provide medical aid for a contractor's employees at a construction site recovered damages from the contractor for injuries suffered while attempting to rescue an employee who was trapped in a landslide. On appeal the contractor maintained that the physician could not avail himself of the rescue doctrine because he had previously agreed to provide necessary medical care to employees injured at the construction site and therefore was not acting in the capacity of a stranger or gratuitous volunteer. In response to this claim, the Supreme Court said:

"It is true that persons such as firefighters, whose occupation by its very nature exposes them to particular risks of harm, ' "cannot complain of negligence in the creation of the very occasion for [their] engagement." ' (*Giorgi* v. *Pacific Gas & Electric Co.,* 266 Cal.App.2d 355, 359 . . . . Since it is the fireman's business to deal with fire, 'a paid fireman has no cause of action against one whose passive negligence caused the fire in which he was injured.' (*Id.* at p. 360; [citations].)

"It is not, however, a doctor's business to cope with steep, slippery embankments. Plaintiff agreed only to furnish medical aid to injured employees; he did not further agree to expose himself to risk and hazards not necessarily inherent in the performance of his services." (6 Cal.3d at p. 369.) While dicta of our high court is not binding as judicial precedent, it is indicative of the court's persuasion on the matter asserted in the absence of a direct holding to the contrary. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 676, 678; pp. 4589-4593.)

In the face of the above authorities, appellants nevertheless ask us to reject the fireman's rule under the criteria expressed in *Rowland* v. *Christian, supra,* for determining whether an exception should be created to the general rule of liability for negligently causing injuries to another. (See Comment, *An Examination of the California Fireman's Rule, supra,* 6 Pacific L.J. 660.) The *Rowland* criteria are expressed as follows: "A departure from this fundamental principle [of a duty of care under Civ. Code, § 1714] involves the balancing of a number of considerations; the major ones are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with the resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. [Citations.]" (69 Cal.2d at pp. 112-113.)

Admittedly, several of the *Rowland* criteria are present in the instant case. The foreseeability of harm to the appellants and the certainty that they had suffered injuries are clear. Respondent Union Oil Company and the defendant Valley Kenworth Corporation as reasonable persons should have foreseen that a defective installation of a muffler pipe might cause a fire and that firemen would be called to extinguish it. It was also foreseeable that a gasoline explosion might occur with resulting injuries to the firemen.

The closeness of the connection between respondent's conduct and appellants' injuries also is met. Respondent's alleged negligence in defectively installing and maintaining the muffler on the header pipe is closely connected both in time and causation to the fire and appellants' injuries. This distinguishes the present case from *Giorgi* and other forest fire situations where the outbreak of the fire is more remote from the firefighter's injuries. The typical brush or forest fire often will break out in one area on a particular day and after many intervening and perhaps superseding causes, such as a change in weather or wind direction, spread to another area and injure firefighters days or even weeks later. It has been held, for example, that if a person starts a fire on his land which spreads to other property by a sudden and unexpected rising of the wind, the weather change may be a superseding cause. (See *McVay* v. *Central California Inv. Co.* (1907) 6 Cal.App. 184 [91 P. 745]; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 630, pp. 2912-2913.)

Moreover, the policy of preventing future harm is satisfied if possessors and owners of property are held personally responsible to firemen for their negligent conduct in causing a fire; they presumably will be more responsible in the maintenance of their property, thereby reducing the number of fires and consequent injuries to firemen.

Finally, *Rowland* mentions the "consequences to the community" of imposing a duty of care on a negligent property owner. It would be to the community's advantage to place the responsibility for injuries suffered by firemen where it belongs—on the negligent property owner rather than on the community in general. The concept of "spreading the risk among the taxpayers" conflicts with the fundamental principle of placing tort liability on the tortfeasor.[3]

On the other hand, several of the *Rowland* criteria do not support a conclusion that a property owner should be held to a duty of care to a fireman for negligently starting a fire. First, it may be persuasively argued that the "moral blame" attached to the defendant's conduct negates the existence of a duty of care in the present case insofar as the respondent Union Oil Company is concerned. While it can be said that the defendant Valley Kenworth's conduct in not properly installing the muffler pipe on the gasoline tank truck was morally wrong when considered in the light of acceptable community standards, Valley Kenworth is not a party to this appeal. As to respondent Union Oil Company, there is nothing to suggest that it knew or had any reason to know of the defectively installed muffler when it sent its truck out on the highway with the load of gasoline. Whether respondent should have checked the muffler to see if it was properly installed before driving the truck and whether its failure to do so may be considered immoral, are close questions, at best. If the *Giorgi* court is correct in stating that the great majority of fires are caused by *passive* human negligence, usually by the owner allowing his property to fall into a state of disrepair, then whether his conduct in permitting his property to deteriorate to the point that it constitutes a fire hazard violates acceptable community standards of behavior might well depend upon the economic status of the property owner. Obviously, if a property owner cannot afford to maintain his property in a fire-safe condition and he is unable to sell or to dispose of

---

[3] The rule of nonliability to a fireman is also inconsistent with the policy expressed in Labor Code section 3852 which allows an employee who is injured on the job to file a tort action against a third person not his employer. Also, Labor Code sections 3850-3864 and Government Code sections 21450-21455 allow the state a right to reimbursement from a third party tortfeasor for compensation or retirement benefits paid to an injured state employee.

it, his passive neglect cannot be considered morally wrong; too many property owners are in that situation to place such a stigma of wrongdoing on them.

Second, the "extent of the burden to the defendant" in imposing a duty to exercise care seems to negate the imposition of a duty to a fireman. Assuming that most fires are caused by some form of human negligence and recognizing the difficulty of proving contributory negligence on the part of a fireman fighting a fire, holding a property owner to a duty of care will result in a rule of absolute liability for the fireman's injuries, assuming the requirements of proximate cause are met. Hence, the imposition of a duty to firemen for negligently causing a fire would greatly increase the burden of owning and using property.

The final criterion mentioned in *Rowland* is "the availability, cost, and prevalence of insurance" to cover the risk involved. We are unable to evaluate this factor because we have not been provided with nor are we aware of any empirical data as to the availability of public liability insurance to a property owner to cover the risk of injuries to firemen. This is probably because most jurisdictions have adopted the fireman's rule (see *Giorgi* v. *Pacific Gas & Elec. Co., supra,* 266 Cal.App.2d at p. 357). We can only surmise that in light of the great number and variety of fires that occur in California each year that if the fireman's rule is abolished, it would be very expensive to obtain liability insurance covering the risk of injuries to firemen.

All things being considered, we conclude that the criteria expressed in *Rowland* v. *Christian, supra,* do not compel the repudiation of the fireman's rule. Furthermore, under the doctrine of stare decisis, we are bound to apply the rule in the instant case.

We turn now to appellants' equal protection argument. Inherent in this argument is the premise that other public safety officers such as policemen and highway patrolmen are not governed by a rule barring them from recovery against third parties for negligently caused injuries suffered by the officers in the performance of their duties. Of course, if all public safety officers are bound by such a rule then appellants have not been deprived of the equal protection of the law. Thus, we must examine the authorities on this point.

In *Bilyeu* v. *Standard Freight Lines* (1960) 182 Cal.App.2d 536 [6 Cal.Rptr. 65], the defendant truck driver fell asleep and his truck veered

from the highway causing a load of steel rolls to be spilled. The plaintiff, a highway patrolman, injured his back while clearing the debris from the highway and was allowed recovery against the defendant. However, *Bilyeu* was decided prior to the adoption of the fireman's rule in *Giorgi* v. *Pacific Gas & Elec. Co., supra,* and thus cannot be deemed a direct holding on the question whether a highway patrolman injured in the course of his official duties is barred by the fireman's rule from recovering from one who negligently caused the officer's presence at the place of his injuries.

In *Enders* v. *Apcoa, Inc.* (1976) 55 Cal.App.3d 897 [127 Cal.Rptr. 751], the court stated that the theft of a car and police pursuit with possible injury to the policemen was a foreseeable result of the defendant parking lot owner's leaving the car unattended with the key in the ignition. It stated that the defendant owed the plaintiff policemen a duty not to act in a negligent manner and left to the jury the determination of whether a failure to exercise due care had resulted under the circumstances. Remarkably, the opinion in *Enders* does not discuss the fireman's rule.

In *Bartholomew* v. *Klingler Co.* (1975) 53 Cal.App.3d 975 [126 Cal.Rptr. 191], a deputy sheriff investigating a burglary fell through the ceiling of an office and was allowed recovery against the owner of the building. The complaint alleged that a known concealed defect existed on the premises and that the owner failed to warn the deputy of the danger despite the opportunity to do so. The trial court had dismissed the action relying on the fireman's rule. However, the appellate court reversed, holding that the application of the fireman's rule was erroneous. The court quoted language from *Scott* v. *E. L. Yeager Constr. Co., supra,* 12 Cal.App.3d 1190, pointing out the nonapplicability of the fireman's rule to "situations in which there is some hidden danger known to the defendant but not to the fireman, . . ." The court held that the fireman's rule has been applied in California only to the negligence which starts a fire, not to the negligence demonstrated by a failure to warn of other known dangerous conditions on the premises. (*Bartholomew* v. *Klingler Co., supra,* 53 Cal.App.3d at pp. 978-979.)

Finally, in *Schrimscher* v. *Bryson* (1976) 58 Cal.App.3d 660 [130 Cal.Rptr. 125], a highway patrolman brought an action against an intoxicated motorist involved in a collision which the patrolman was investigating. After directing the defendant to move his vehicle off the freeway and placing him under arrest, a car driven by another intoxicated motorist veered off the freeway and struck the defendant's

car, knocking it into the patrolman and injuring him severely. Summary judgment in favor of the defendant was granted by the trial court and affirmed on appeal. The appellate court held that it would be an unwarranted extension of liability to hold an original traffic violator, whose conduct brought a peace officer to the scene, liable for injury to the peace officer resulting from the negligence or criminal conduct of another person while the officer was issuing a citation, investigating an accident, or performing other duties. The negligence or criminal conduct of the second driver amounted to an intervening cause breaking the chain of causation from the original negligent act. After reaching this result, the court made some observations about the fireman's rule:

"Here the plaintiff was . . . simply discharging his duty to investigate the accident. In that activity his situation is comparable to that of the fireman who is injured fighting a fire. In *Giorgi* v. *Pacific Gas & Elec. Co.,* [citation], it was held that a paid fireman has no cause of action against one whose *passive negligence* caused the fire in which he was injured.

"*Giorgi* was cited with approval in *Solgaard, supra,* [6 Cal.3d] at page 369, and the rule was there broadened to include other persons whose occupations by their nature expose them to particular risks of harm. While violations of traffic laws, especially that of drunk driving, are more culpable conduct than *passive* negligence, [court's emphasis] *the police considerations underlying the above stated rule dictates that under the stipulated facts of this case defendant should not be held liable for the officer's injuries.*" (Italics added. 58 Cal.App.3d at pp. 665-666.)

In summary, the *Bilyeu, Enders, Bartholomew,* and *Schrimscher* decisions are not dispositive on the question whether policemen are subject to the fireman's rule. In *Bilyeu* a highway patrolman successfully stated a cause of action for negligence, but this result was reached prior to the adoption of the fireman's rule in California. *Enders* stated that a duty of care was owed to a policeman, intimating that a policeman could state a cause of action for negligence; however, the fireman's rule was not discussed. In *Bartholomew* the court implied that the fireman's rule applies to a police officer performing his duties; but the rule was avoided because it applies only to negligence which starts a fire and not to negligence demonstrated by a failure to warn of a known dangerous condition in the premises. Finally, in *Schrimscher* the fireman's rule was cited with approval in barring an action brought by a highway patrolman for negligence; however, that portion of the decision was mere dicta—the decision was clearly based on proximate cause.

Given these cases and the absence of a direct holding to the contrary, we must conclude that the fireman's rule is applicable to policemen, highway patrolmen, and other public safety officers. We are unable to perceive any distinction in reason or policy between the activities of a policeman and a fireman insofar as the existence of a duty to exercise care in the management of one's property to avoid injury to them in the performance of their duties. Thus, appellants' equal protection argument must fail.

The appeal of intervener and appellant California State Department of Conservation, Division of Forestry, is ordered dismissed.

The judgment of dismissal of appellants Farmer and Nunlee's complaint in negligence against respondent Union Oil Company following the order sustaining the general demurrer without leave to amend is affirmed.

Gargano, Acting P. J., concurred.

**HOPPER, J.**—I concur in the judgment solely under the compulsion of the doctrine of stare decisis. If I were not so compelled and if sufficient empirical data were presented to the court as to the probable effect on the general public of the elimination of such a rule, I might very well decline to follow the fireman's rule and would instead apply general negligence concepts. The viability of the fireman's rule has been destroyed by the acute analysis of Moss in Comment, *An Examination of the California Fireman's Rule* (1975) 6 Pacific L.J. 660. There is nothing to be served by an extensive discussion beyond a reference to that cogent comment. It has clearly demonstrated that the public policy considerations in favor of the rule pale dramatically in significance when compared to the existing countervailing considerations.

If, in fact, the sole logical basis for the fireman's rule is that the fireman is merely being paid for what he does and he has been given added consideration in the form of higher compensation, early retirement, disability benefits, and worker's compensation—, then the Legislature should be encouraged to increase the benefits which now are small surcease for sorrow to a severely injured person or family.

Furthermore, I read *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 112 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], as putting the burden on the advocates of the fireman's rule to establish that an exception to the

general principle is "clearly supported by public policy." I do not believe that burden has been met.

In addition, it has been noted that many people today seriously question our present method of settling disputes and even the entire tort system. Nevertheless, so long as we continue to be governed by the present tort system, I shall continue to believe that it is essentially unjust to reduce firemen and other public safety officers to a lower status when injured that that accorded to others. The Legislature of this state has clearly spoken in Civil Code section 1714. Under the existing tort system I find it somewhat incongruous to place the burden of compensating public safety officers, for injuries received in the case of negligently caused fires, solely on the taxpayers as a whole, instead of initially on the negligent party as we do in other situations. The fireman's rule is a derailment from the fundamental concept of liability for negligence. I would return to the track.