JAMES, APPELLANT, v. CITIES SERVICE OIL CO., APPELLEE.

(Decided November 10, 1939.)

*Mr. John Ruffalo,* for appellant.
*Messrs. Manchester, Ford, Bennett & Powers,* for appellee.

NICHOLS, P. J. Joseph W. James, a member of the fire department of the city of Youngstown, bearing the rank of captain, brought his action in the Common Pleas Court of Mahoning county against Cities Service Oil Company to recover damages for personal injuries suffered by him in the performance of his duties as a fireman attending a fire upon the premises of the oil company. The parties will be referred to herein as they appeared in the court below, to wit, as plaintiff and defendant.

The basis of plaintiff's claim of liability against the defendant is that upon the occasion of the fire there was a hidden, concealed danger upon defendant's premises concerning which he was given no warning,

although the owner was present by its agents in charge of the premises who had knowledge of such danger, which danger was unknown to plaintiff and of which he had no opportunity to be apprised in the absence of such warning.

At the conclusion of plaintiff's evidence the trial court sustained defendant's motion for a directed verdict in its favor on the ground that the situation presented by the record is covered by the decision of this court in the case of *Cities Service Oil Co.* v. *Sause,* 14 Ohio Law Abs., 429. Judgment on this directed verdict having been entered for the defendant, appeal upon questions of law was duly prosecuted by plaintiff to this court.

On and prior to November 9, 1929, the defendant was engaged in the wholesale and retail gasoline and oil business in the city of Youngstown and operated a large gasoline supply and storage station at 1734 Poland avenue in that city, at which station various tanks for the storage of gasoline and oils were maintained, particularly one storage tank for gasoline which was about 25 feet high and 25 feet in diameter and had a capacity of approximately 100,000 gallons. A number of smaller tanks of various capacities, as well as a still larger tank having a capacity of about 200,000 gallons, were likewise located on defendant's premises. Adjacent to the gasoline storage plant of defendant and about 100 yards distant therefrom was the plant of Akron Soap Company, engaged in manufacturing soap and similar products, and nearby was the plant of Republic Steel Corporation.

Near to the tank a street or roadway ran from Poland avenue into defendant's plant, and on the premises was also located a railroad switch track used for the purpose of running tank cars filled with gasoline for unloading into the tanks upon the property. All of the storage tanks were situated on concrete foundations. On the premises was a platform known

as the loading and unloading platform. Surrounding or adjacent to the 100,000-gallon tank was a concrete platform which on the day in question had located thereon an electric pump equipped with supply and discharge pipes. On that day the 100,000-gallon tank had been emptied of its gasoline content except that in the bottom there remained about two inches of gasoline and sediment. Near the bottom of this tank was an opening known as a manhole, about fifteen inches square, which when closed was covered by an iron door or lid fastened with bolts. In the top of the large tank were two small openings or vents and also at the top, or near the top, was another manhole which sometime previously had been entirely closed by employees of defendant.

On the day in question the manhole near the bottom of the tank was open and employees of defendant were engaged in pumping from the bottom of the tank the so-called sediment and an inch or two of gasoline which still remained in the tank. A spark from the electric motor, operating the pump used for this purpose, ignited a quantity of wood located on the concrete platform, upon which platform gasoline had also leaked from the pipes connected to this pump. The burning wood was located some five to ten feet away from the open manhole. Employees of the company attempted to put out the fire by the use of a foamite machine, but not being familiar with the operation of this machine were unable to get it to work, whereupon a Mr. Dixon, then employed by Akron Soap Company but formerly an employee of the oil company which operated this plant, went to the scene of the fire for the purpose of operating the foamite machine.

Someone, the record not being entirely clear as to the identity of the person, sent in a fire alarm call from the box located on the premises of the soap company. Three fire companies, each in charge of a captain, responded to the alarm, the third company being that of

which plaintiff was captain. When he and his company arrived at the fire, other firemen who had previously arrived were trying to connect the fire hose to a water plug located near the 100,000-gallon tank. Plaintiff, seeing the other firemen having difficulty in connecting the hose to the water plug, proceeded to put in operation a chemical tank located on his fire truck and was engaged in throwing the chemical solution upon the fire when a violent explosion took place in the 100,000-gallon tank, severely burning and injuring plaintiff and other firemen, as well as the former employee, Dixon.

When the firemen arrived upon the scene, several employees of the defendant company ran away from the fire without otherwise giving any notice to the firemen of certain facts which it is claimed constituted a hidden danger upon the premises, and of which danger and hazard plaintiff testified he did not know, and, in substance, that he did not have the opportunity to ascertain for himself.

The evidence in the case indicates that when gasoline is stored in these tanks they are equipped with small vents in the top to take care of the expansion; that when the gasoline content is emptied from the tank a gasoline vapor of highly volatile content when mixed with air remains for some period of time in the tank; and that the tank may be cleared of the volatile content by the injection of steam in the lower manhole with the upper manhole open.

Although the petition of plaintiff alleges facts tending to show that defendant negligently operated its plant and apparatus in connection therewith, no claim is made by plaintiff to this court of liability because of any negligence of defendant in starting the fire; but it is claimed that liability arises against defendant because, in its operation of the plant in the manner in which it was operated, an extreme hazard and danger of explosion was created, which hazard and danger

were known to the employees of defendant in charge of its plant and were unknown to plaintiff when he responded to the alarm of fire and went upon defendant's premises to help extinguish the same; and that he did not have an opportunity of knowing and apprising himself of such hazard and danger before the tank exploded.

Upon the trial, the Common Pleas Court sustained defendant's motion, made at the conclusion of plaintiff's evidence, for a directed verdict for defendant, and thereafter rendered judgment for defendant after plaintiff's motion for new trial was overruled. Upon appeal on questions of law to this court the principal error assigned and the only one to which we need give consideration is that the trial court erred in directing the verdict against plaintiff and rendering judgment for defendant.

The fire which occurred at the plant of defendant on the afternoon of November 9, 1929, has been the basis of more than one other action for damages against the oil company. At least two other cases growing out of this fire have been before this Court of Appeals for review. In each of the former cases, as well as in the present action, much contention has been made as to whether plaintiff in each action had knowledge that the manhole near the bottom of the storage tank was open at the time of the fire. One of the cases to which we refer is that of *Cities Service Oil Co.* v. *Sause, supra.*

It seems apparent that the trial court in the instant action sustained defendant's motion for directed verdict in reliance upon the propositions stated in the syllabus of the *Sause case,* that being an action by another fireman to recover damages, in which plaintiff recovered a judgment in the sum of $12,500. The opinion in that case was rendered by Judge Pollock, a very able and conscientious member of this

court. The judgment in favor of plaintiff was reversed and final judgment entered in favor of the oil company. In the opinion rendered by Judge Pollock, reference is made to the case of *Hannan, Admr.,* v. *Ehrlich,* 102 Ohio St., 176, 131 N. E., 504, from which the following is quoted:

"A licensee takes his license subject to its attendant perils and risks, and the licensor owes him no duty except to refrain from wantonly or wilfully injuring him and to exercise ordinary care after discovering him to be in peril; he should not be exposed to hidden dangers, pitfalls or obstructions."

In the case of *Mason Tire & Rubber Co.* v. *Lansinger,* 15 Ohio App., 310, this Court of Appeals followed *Hannan* v. *Ehrlich, supra,* and stated the rule in the majority of jurisdictions in this country to the effect that where a fireman goes upon the premises of another in the discharge of his duties, the owner is only to refrain from inflicting wilful or intentional injuries, but we think there are occasions when the owner owes a greater duty, and "If there is a substance stored on the premises, which it is reasonable to presume will become dangerous to such fireman, as the fire progresses, it is the owner's duty to give warning of such danger, if this condition is known to him and he is present at the fire. * * * A failure to give such warning will render the owner of the property liable, in damages, for personal injury to a fireman caused by such danger, if the danger is unknown to the fireman and could not have been discovered by him with ordinary care under the then existing conditions."

Having so found the law to be, this court nevertheless in *Cities Service Oil Co.* v. *Sause, supra,* rendered final judgment against fireman Sause, the court having found from the record in that case that "there is no evidence * * * sustaining the verdict returned by the jury and that the court below was in error in not

sustaining the motion to direct a verdict for the defendant at the close of all the evidence.''

The judgment of this Court of Appeals in the case of *Mason Tire & Rubber Co.* v. *Lansinger, supra,* was affirmed by the Supreme Court (108 Ohio St., 377, 140 N. E., 770). In that case the presence of the explosive in the building of defendant company, near where plaintiff was operating the fire apparatus of the Kent fire department, was admitted on both sides and was clearly known to defendant company and unknown to plaintiff unless there was a warning or notice given him of the presence of the explosive. The trial court had charged the jury that if plaintiff was in a place of danger, warning was required to be given by defendant before the explosion and in sufficient time to have permitted plaintiff to have sought a place of safety. The Supreme Court approved this charge and established, or at least recognized, the rule in Ohio to be that if a fireman is exposed to a hidden danger of which the owner of the premises upon which the fire is burning knows, it is the owner's duty to notify the fireman unless the fireman has knowledge of the danger or has had reasonable opportunity to discover the same. This is the rule set forth in Restatement of the Law of Torts, 932, Section 342, where it is stated:

''A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon if, but only if, he (a) knows of the condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, and (b) invites or permits them to enter or remain upon the land, without exercising reasonable care (i) to make the condition reasonably safe, or (ii) to warn them of the condition and the risk involved therein.''

In Restatement of the Law of Torts, 917, Section 337, the same rule, in substance, is laid down as to liability to trespassers, indicating that there is little

difference in the duty owing to a licensee and to a trespasser.

In *Rubber Co.* v. *Lansinger, supra,* this court held that a fireman who enters premises in performance of his duty is a licensee.

Section 4378, General Code, specifically prescribes that the fire department shall protect the lives and property of the people in case of fire.

The evidence in the case we have under consideration does not indicate that the owner or any of his agents or servants sent in the alarm of fire or otherwise called the fire department; hence we content ourselves with stating the rule laid down in Restatement of the Law of Torts, 946, Section 345, as follows:

"A possessor of land is subject to liability for bodily harm caused by a natural or artificial condition thereon to others who are privileged to enter the land for a public * * * purpose, irrespective of his consent, if he (a) knows that they are upon the land or are likely to enter it in the exercise of their privilege, and (b) knows of the condition and realizes that it involves an unreasonable risk to them and has no reason to believe that they will discover the condition or realize the risk, and (c) fails to exercise reasonable care (i) to make the condition reasonably safe or (ii) to warn them of the condition and the risk involved therein."

The effect of the rule stated in Section 345, *supra,* is to subject the possessor of land to a liability toward such privileged persons which is identical with that to which he is subject under the rule stated in Section 342, above quoted, toward a gratuitous licensee.

We have not had access to the evidence in the case of *Sause* v. *Cities Service Oil Co.* which gave rise to the judgment of this Court of Appeals as reported in 14 Ohio Law Abs., 429, and we are not able to reconcile the decision of this court in that case with its decision in the case of *Cities Service Oil Co.* v. *Dixon,* 14 Ohio

Law Abs., 203, wherein this court held that the owner of a gasoline station is under a duty to a licensee assisting in putting out a fire to warn of the dangerous condition created by the existence of an open manhole in the gasoline tank near where the fire was burning, if the licensee has no knowledge thereof.

In the latter case this court reversed the judgment of the Common Pleas Court for error in the admission of evidence to substantiate the claim of plaintiff that the fire was started negligently as showing liability of the defendant, and for error in the charge of the court to the same effect. In reversing that judgment, it was stated by Judge Pollock in the opinion that if the defendant "knew of the dangerous condition, knew the manhole was open, it was his duty to warn of the dangerous condition when the fire got over near that hole whether Dixon was an implied invitee or licensee, and if Dixon did not know of the danger he did not assume the risk of that dangerous condition when he went there. * * * We cannot say that the case should be reversed on the weight of the evidence and we cannot direct a verdict."

We think that this court as constituted at that time recognized that it was a question of fact for the jury to determine under proper instructions whether a hidden danger existed on the premises of the defendant at the time plaintiff went thereon to assist in putting out the fire, of which danger plaintiff did not know and of which he did not have reasonable opportunity to ascertain, and whether defendant did know of the danger and failed to exercise reasonable care to notify plaintiff thereof before the explosion.

From the record, giving to the evidence therein the interpretation most favorable to plaintiff, we arrive at the conclusion that reasonable minds could come to different conclusions as to whether at the time of this fire there were conditions existent upon the premises of defendant which constituted a hidden peril or dan-

ger, of which the fireman did not know and of which he had no opportunity of knowing before the explosion; that defendant by its servants and agents knew of the danger, and the further question of fact was present as to whether these agents and servants exercised reasonable care to warn plaintiff of the peril which was known to them and not known to plaintiff.

While we are mindful of the dilemma in which the trial court found itself by reason of the conflicting prior decisions of this court as formerly constituted, we must and do find that the trial court erred in this case in directing a verdict for defendant. It is pertinent to refer to certain facts shown in the record which are to the effect that when a gasoline tank of the character which exploded and injured plaintiff has been emptied of its contents and the highly explosive gasoline vapors are formed in the tank, these vapors may be expelled by the use of steam, and if so expelled the tank would have little tendency to explode. The evidence indicates that after steam is used these vapors would be removed from the tank within a period of forty-eight hours. The agents and servants of defendant company knew and the fireman did not know that this tank had been emptied of its contents but a very short time, perhaps an hour, before the fire started. The agents and servants of defendant knew and the firemen did not know that a manhole at the top of the tank had been tightly closed and sealed. These agents and servants of defendant knew that the tank had not been emptied of the volatile explosive gases by the use of steam.

The evidence further indicates that the agents and servants of defendant knew of the danger of explosion and ran from the premises before the tank exploded. Plaintiff testified that he did not know that the lower manhole was open. All of these circumstances may have been refuted by the evidence of defendant had the verdict not been directed, but in any event it was

for the jury to determine whether defendant was liable to plaintiff under the rule which we have hereinbefore stated.

It follows that the judgment of the Common Pleas Court must be, and the same is, reversed, and the cause remanded for further proceedings according to law.

*Judgment reversed and cause remanded.*

CARTER and PHILLIPS, JJ., concur.