ERNEST M. KRAUTH, PLAINTIFF-APPELLANT, v. ISRAEL
GELLER AND BUCKINGHAM HOMES, INC., A COR-
PORATION OF THE STATE OF NEW JERSEY, ALSO
KNOWN AS BUCKINGHAM BUILDERS, DEFENDANTS-
RESPONDENTS.

Argued November 9, 1959—Decided January 11, 1960.

*Mr. Harold R. Teltser* argued the cause for plaintiff-appellant (*Messrs. Torppey and Teltser,* attorneys; *Mr. Harold R. Teltser,* of counsel).

*Mr. Edward E. Kuebler* argued the cause for defendant-respondent, Israel Geller.

The opinion of the court was delivered by

WEINTRAUB, C. J.    ■ This case involves the liability of the owner or occupier of lands to a fireman injured while discharging his duty as a public employee. Plaintiff obtained a judgment on a jury verdict. The Appellate Division reversed with the direction that judgment be entered for defendant. One judge dissented, agreeing that a reversal was required by errors in the charge to the jury, but concluding that upon the facts plaintiff could succeed on a retrial. 54 *N. J. Super.* 442 (1959). Plaintiff's appeal comes to us as of right. *Constitution of* 1947, *Article* VI, § 5, *par.* 1(*b*) ; *R. R.* 1:2–1(*b*). (Plaintiff has since passed away and his administratrix was substituted. "Plaintiff," as hereinafter used, refers to the deceased.)

We agree the judgment was properly reversed for the reasons upon which all members of the Appellate Division agreed. The sole matter that concerns us is the correctness of the holding of the majority that upon the most favorable view of the situation plaintiff must fail as a matter of law.

■ Much has been written with respect to the duty owed to and the status of a fireman who enters private property pursuant to his public employment. He is not a trespasser, for he enters pursuant to public right. Although it is frequently said he is a licensee rather than an invitee, it has been correctly observed that he falls within neither category, for his entry does not depend upon permission or invitation of the owner or occupier, nor may they deny him admittance. Hence his situation does not fit comfortably within the traditional concepts. *Prosser, Torts* (2d ed. 1955), § 78, *p.* 460; *Shypulski v. Waldorf Paper Products Co.,* 232 *Minn.* 394,

45 *N. W. 2d* 549 (*Sup. Ct.* 1951); *Beedenbender v. Midtown Properties,* 4 *A. D. 2d* 276, 164 *N. Y. S. 2d* 276 (*App. Div.* 1957). His status being *sui generis,* justice is not aided by appending an inappropriate label and then visiting consequences which flow from a status artificially imputed.

■ In what circumstances should the owner or occupier respond to the injured fireman? That the misfortune here experienced by a fireman was well within the range of foreseeability cannot be disputed. But liability is not always co-extensive with foreseeability of harm. The question is ultimately one of public policy, and the answer must be distilled from the relevant factors involved upon an inquiry into what is fair and just. See *Rappaport v. Nichols,* 31 *N. J.* 188, 205 (1959); *Wytupeck v. City of Camden,* 25 *N. J.* 450, 461 (1957).

■ It is quite generally agreed the owner or occupier is not liable to a paid fireman for negligence with respect to the creation of a fire. 2 *Harper and James, Torts* (1956), § 27.14, *p.* 1503; *Annotation,* 141 *A. L. R.* 584, 585 (1942); 13 *A. L. R.* 637 (1921); *Villano v. Pure Oil Co.,* 62 *N. J. Law J.* 37 (*Sup. Ct.* 1938). To our knowledge but one decision seems to run against this proposition. *Houston Belt & Terminal Ry. Co. v. O'Leary,* 136 *S. W.* 601 (*Tex. Civ. App.* 1911), disapproved in *Suttie v. Sun Oil Co.,* 15 *Pa. Dist. & Co. R.* 3, 7 (*Cty. Ct.* 1930) and questioned in *Bohlen, "The Duty of a Landowner Toward Those Entering His Premises of Their Own Right,"* 69 *U. Pa. L. Rev.* 252, *fn.* 39 (1920–21). The rationale of the prevailing rule is sometimes stated in terms of "assumption of risk," used doubtless in the so-called "primary" sense of the term and meaning that the defendant did not breach a duty owed, rather than that the fireman was guilty of contributory fault in responding to his public duty. See *Meistrich v. Casino Arena Attractions, Inc.,* 31 *N. J.* 44 (1959). Stated affirmatively, what is meant is that it is the fireman's business to deal with that very hazard and hence, perhaps by analogy to the contractor engaged as an expert to remedy

dangerous situations, he cannot complain of negligence in the creation of the very occasion for his engagement. In terms of duty, it may be said there is none owed the fireman to exercise care so as not to require the special services for which he is trained and paid. Probably most fires are attributable to negligence, and in the final analysis the policy decision is that it would be too burdensome to charge all who carelessly cause or fail to prevent fires with the injuries suffered by the expert retained with public funds to deal with those inevitable, although negligently created, occurrences. Hence, for that risk, the fireman should receive appropriate compensation from the public he serves, both in pay which reflects the hazard and in workmen's compensation benefits for the consequences of the inherent risks of the calling. *Villano v. Pure Oil Co., supra* (62 *N. J. Law J.* 37); *Lunt v. Post Printing & Publishing Co.,* 48 *Colo.* 316, 110 *P.* 203, 30 *L. R. A., N. S.,* 60 (*Sup. Ct.* 1910).

Although there is virtual unanimity with respect to non-liability for negligence as to the creation of fire, there is appreciable authority which would impose liability upon the land occupier for negligence with respect to conditions creating undue risks of injury beyond those inevitably involved in fire fighting. Thus it has been held that a fireman may recover if the injurious hazard was created in violation of statute or ordinance. *Bandosz v. Daigger & Co.,* 255 *Ill. App.* 494 (*Ct. App.* 1930) (storage of dangerous substance); *Maloney v. Hearst Hotels Corp.,* 274 *N. Y.* 106, 8 *N. E. 2d* 296 (*Ct. App.* 1937) (storage of dangerous substance); *Drake v. Fenton,* 237 *Pa.* 8, 85 *A.* 14 (*Sup. Ct.* 1912) (failure to guard elevator shaft); but see *Kelly v. Henry Muhs Co.,* 71 *N. J. L.* 358 (*Sup. Ct.* 1904). So also, he has prevailed if the occupier failed to utilize an available opportunity to warn him of a hidden peril. *Shypulski v. Waldorf Paper Products, supra* (45 *N. W. 2d* 549); *Jenkins v. 313–321 W. 37th Street Corp.,* 284 *N. Y.* 397, 31 *N. E. 2d* 503 (*Ct. App.* 1940), rehearing denied 285 *N. Y.* 614, 33 *N. E. 2d* 547 (*Ct. App.* 1941); *Schwab v. Rubel Cor-*

*poration,* 286 *N. Y.* 525, 37 *N. E.* 2d 234 (*Ct. App.* 1941); *James v. Cities Service Oil Co.,* 66 *Ohio App.* 87, 31 *N. E.* 2d 872 (*Ct. App.* 1939), affirmed 140 *Ohio St.* 314, 43 *N. E.* 2d 276 (*Sup. Ct.* 1942); *Cities Service Oil Co. v. Dixon,* 14 *Ohio Law Abst.* 203 (*Ct. App.* 1932). And the land occupier has been held where he failed to exercise due care with respect to the condition of places intended as a means of access by contemplated visitors. *Meiers v. Fred Koch Brewery,* 229 *N. Y.* 10, 127 *N. E.* 491, 13 *A. L. R.* 633 (*Ct. App.* 1920); *Beedenbender v. Midtown Properties, supra* (164 *N. Y. S.* 2d 276); *Taylor v. Palmetto Theater Co.,* 204 *S. C.* 1, 28 *S. E.* 2d 538 (*Sup. Ct.* 1943); *cf. Anderson v. Cinnamon,* 365 *Mo.* 304, 282 *S. W.* 2d 445, 55 *A. L. R.* 2d 516 (*Sup. Ct.* 1955); *Bohlen, supra* (69 *U. Pa. L. Rev.,* at *p.* 350). There are, of course, decisions the other way, but where liability is found the emphasis is not upon culpability with respect to the inception of the fire but rather with respect to the other risks of injury we have described.

The present case does not fall within any of the exceptions, if such they may be called, outlined in the paragraph above. Defendant was the owner and builder of a one family home under construction at the time of the occurrence. While proceeding along an interior balcony and meaning to descend the stairs, plaintiff mistook layers of smoke for them and fell. Neither the balcony nor the stairs were protected by a railing—the construction simply had not reached that stage. No breach of duty could be found with respect to the condition of the premises. And defendant not being on the scene, there was no culpable failure to seize an opportunity to warn of a hidden danger. In fact, plaintiff, who had been on the premises a few days before the accident, admitted he was fully aware of the precise state of construction of the balcony and stairs.

What plaintiff seeks is an inroad upon the basic rule that the occupier is not liable to a fireman for the creation of a fire. Placing himself in the category of a licensee, or at

least by analogy thereto, he urges defendant was guilty of "wanton" conduct. The allegedly wanton conduct occurred before plaintiff entered the premises and at most can consist of precipitating unnecessarily a call upon the fire force. Defendant loaned a salamander to the plasterer (defendant claims he was an independent contractor, but we here assume he was an employee) who used it to provide heat and thus to dry the plaster. The device consists of a container for the fuel and a pipe or stack of some four feet in height, with a movable cap or cover. If the controls are set properly, the flame remains within the pipe, causing it, as we read the record, to become cherry red, a condition which from the outside could suggest an uncontrolled fire. On the evenings of March 1, 2 and 5, as the jury could find, the flame actually rose above the top of the pipe resulting in danger of conflagration of the premises. The fire department answered the calls of neighbors on each of those days. Plaintiff was a member of the team that responded on March 1 and 5, the accident occurring on the latter day.

On March 2 (prior to the incident of that day), the assistant fire chief talked with defendant. He said,

"I asked him if he would please leave a man there in attendance with it or if he would check it himself."

and

"* * * It was just a matter of cooperation between him and the fire department. We already had one run there and he knew what happened. He was building a house, and if he didn't want to have another run we were asking his cooperation to leave a man or to see that it was taken care of. That's it."

Defendant's version was that the assistant chief "requested that I have placed above the top of the salamander a protective covering, either metal or sheet rock," and this advice he passed on to the plasterer, a man who, he said, was experienced in the use of a salamander.

Plaintiff of course is entitled to the most favorable view of the testimony. But there was no evidence that prudent practice required constant attendance of a salamander. There was no testimony that a salamander inevitably or likely will behave as this one did. Defendant testified without contradiction that salamanders were in regular use in the area. The assistant chief said a salamander could go out of control for several reasons but was unable to tell why this one did.

We are not concerned with the liability to a fireman of an arsonist or one who deliberately induces a false alarm. Rather we are asked to hold that "wanton" conduct resulting in a fire and consequent alarm will suffice. Wantonness is not too precise a concept. It is something less than intentional hurt, and so viewed is an advanced degree of negligent misconduct. In the context of the policy considerations which underlie the rule of non-liability for negligence with respect to the origination of a fire, it is debatable whether degrees of culpability are at all pertinent.

At any rate, we need not decide the question since we can see no basis for a claim of wanton misconduct as the term is ordinarily defined. To warrant that characterization, the act or the omission to discharge a duty must be intentional, and coupled with a consciousness, actual or imputed, of a high degree of probability that harm, here to a fireman, will ensue. See *Staub v. Public Service Railway Co.*, 97 *N. J. L.* 297, 300 (*E. & A.* 1922); *Prosser, Torts* (*2d ed.* 1955) § 33, *p.* 151; *Restatement of Torts* (1934) § 500. Plaintiff does not suggest that the incidents of March 1 or March 2 fall within this area. Rather he claims a third episode crosses the line. Three such occurrences within five days evoke exasperation, but, however indicative of a lack of care, they do not reveal a purpose to cause a conflagration or to attract the fire department. And although injury to a fireman is surely foreseeable, and this despite the rather freak circumstance that layers of smoke simulated a stairway, yet there was no evidence of a consciousness, actual or imputable, of a high degree of proba-

bility that harm would befall a fireman. In fact on the first two occasions none resulted although the physical scene was identical.

We think it would be artificial to squeeze the situation within the category of wanton conduct. Rather, in proper perspective, the question is whether the land occupier should be held liable for a second or third act of carelessness. If the time interval had been greater, it would be more apparent that the issue is the one just stated, and the sense of exasperation to which we referred would be less pronounced or absent. But if the prevailing rule of non-liability to a paid fireman with respect to the origination of the occasion for his work is sound, and we are not persuaded otherwise, we think it unwise to attempt to substitute, or to qualify it with, a formula in which the factor of numbers and time intervals will somehow be decisive.

There being no suggestion that plaintiff could fare better upon a retrial, the judgment of the Appellate Division directing the entry of judgment is affirmed. No costs.

*For affirmance*—Chief Justice WEINTRAUB, and Justices BURLING, FRANCIS and PROCTOR—4.

*For reversal*—Justice JACOBS—1.