EDWARD J. TRAINOR AND JACQUELYN TRAINOR, HIS WIFE, PLAINTIFFS-RESPONDENTS, v. FRANCISCO SANTANA, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued April 29, 1980—Decided July 1, 1980.

Before Judges CRANE, MILMED and KING.

*John J. O'Donnell* argued the cause for appellant (*O'Donnell, McCord & Leslie*, attorneys).

*Lewis Stein* argued the cause for respondents (*Nusbaum, Stein, Goldstein & Bronstein*, attorneys).

The opinion of the court was delivered by

MILMED, J. A. D.

Plaintiff, Edward J. Trainor, a police officer employed by the Town of Dover, sued defendant Francisco Santana for damages for injuries sustained as a result of defendant's alleged negligence in the operation of his motor vehicle. The essential facts which gave rise to the suit may be briefly summarized. At about 2:50 in the morning of January 4, 1976 plaintiff, while in a patrol car on routine patrol in the performance of his duties, observed defendant's car "travelling at a fast speed." After chasing the car for about five blocks he noticed it came to a stop "alongside the road." Plaintiff approached defendant's vehicle and directed his flashlight on the occupants, defendant and another man, who he claimed "were lying in the car hiding." Then, finding the car door unlocked, he opened it, asked defendant for his driver's license, registration and insurance identifica-

tion card and "advised him he was under arrest." Plaintiff testified that defendant "shouted, 'No license', and . . . at the same time, grabbed the door and started the car in one movement." As defendant slammed the door, both of plaintiff's arms became momentarily pinned inside the car. After managing to free himself he "stepped out away [from the car] toward the center of the road." The wheels on defendant's car kept spinning on the icy road, then regained traction and the car "came at" plaintiff who "tried to jump from the path of it, but because of the icy conditions . . . was unable to clear the car entirely." Plaintiff said that the front left fender of the car hit him in his knees and above his knees, that he was "spun around and . . . bounced back off the left rear quarter panel." At that point plaintiff drew his service revolver and shot at the left rear tire of defendant's car. Defendant fled, but was apprehended a short while later. Plaintiff sought damages for the injuries which he sustained, and his wife, plaintiff Jacquelyn Trainor, sued for damages for loss of her husband's services and consortium.

Defendant denied that his car struck plaintiff at any time. Testifying through an interpreter, he said that he first became aware that a police officer was in the area when he was parking and saw a police car come up the street and park behind his car. When the police "opened the [car] door and . . . confronted [him], . . . the car began to slip." He tried to stop his car because he remembered that the police car was parked to the rear of his car. He "realized [his car] was slipping back and [he] gave it gas." It "began to skid on the ice." He then heard gunshots, "pulled away and went into a hidden driveway, private driveway." He then ran into his house where he was arrested.

At the close of the evidence in the jury trial defendant moved for judgment, urging the application of *Krauth v. Geller*, 31 *N.J.* 270 (1960). The trial judge denied the motion and the case was submitted to the jury. The jurors returned a verdict in favor of plaintiffs, finding defendant 90% negligent and plaintiff Edward J. Trainor 10% negligent. They fixed Edward Trainor's

damages at $70,000 and his wife's at $5,000. Based on the jury's findings, judgment was ordered entered: (1) in favor of Edward J. Trainor for $63,000 plus prejudgment interest of $10,052, and (2) in favor of Jacquelyn Trainor for $4,500 plus prejudgment interest of $742. Defendant's motion for a new trial was denied. This appeal from the judgment followed.

Defendant does not contend on this appeal that the jury verdict is against the weight of the evidence. In urging us to reverse the judgments entered against him he maintains that it was "prejudicial error" for the trial judge to fail to grant his motion for judgment "based on the *Krauth* rule or to charge the jury in accordance with the rule as [he had] requested." He contends that "a policeman, as well as a fireman, should be precluded from recovering damages for injuries sustained in the line of duty as the proximate result of another's negligence where such injuries arise out of a foreseeable risk of his occupation."

We find no merit whatever in the appeal. Defendant can take no comfort from the court's holding in *Krauth* that an owner or occupier of lands is not liable to a paid fireman for negligence with respect to the creation of a fire. 31 *N.J.* at 273. As the court explained,

> . . . it is the fireman's business to deal with that very hazard and hence, perhaps by analogy to the contractor engaged as an expert to remedy dangerous situations, he cannot complain of negligence in the creation of the very occasion for his engagement. In terms of duty, it may be said there is none owed the fireman to exercise care so as not to require the special services for which he is trained and paid. . . .

> Although there is virtual unanimity with respect to non-liability for negligence as to the creation of fire, there is appreciable authority which would impose liability upon the land occupier for negligence with respect to conditions creating undue risks of injury beyond those inevitably involved in fire fighting. [at 273–274]

The *Krauth* rule has generally been confined to landowner or land occupier situations. *Accord, Jackson v. Velveray Corp.,* 82 *N.J..Super.* 469, 475 (App.Div.1964), where it was held that this "rule of nonliability extends not only to negligence in creating

or starting the fire but also includes negligence related to the spread of the fire, such as ordinary negligence in housekeeping which tends to promote the spread of a fire after its inception from other causes." It has more recently been made applicable to (a) one who comes upon the land at the owner's or occupier's request for a limited purpose, *e. g.*, to repair an oil burner, and (b) volunteer firemen as well as full-time firemen. *Ferraro v. Demetrakis,* 167 *N.J.Super.* 429 (App.Div.1979), certif. den. 81 *N.J.* 290 (1979). However, we discern no sound basis for its extension, as urged by defendant, to cloak a motorist with immunity from suit for his negligent acts whenever his victim is an unsuspecting police officer engaged in the performance of his police duties. Defendant's erratic striking of Trainor with his car, with the resulting injury, was obviously not a foreseeable risk of the officer's exercise of his police function at the time. Beyond this, the immunity sought by defendant would be neither fair nor just. *Krauth, supra,* 31 *N.J.* at 273.

Defendant calls attention to the recent case of *Berko v. Freda,* 172 *N.J.Super.* 436 (Law Div.1980). There, as the opening paragraph of the opinion discloses, defendant Freda left his keys in his car and the car was stolen. Plaintiff, a police officer, "having received a report by radio, saw the car and gave chase." He contended "that his police car was intentionally rammed three times and that the thief, after the cars were stopped, intentionally stepped on the accelerator while he had his arm in the open door." He, Officer Berko, "was dragged and injured." 172 *N.J.Super.* at 437. Among other things, the trial judge deemed the *Krauth* rule applicable and granted defendant Freda's motion for summary judgment. We disapprove of that disposition. See the majority opinion of the Supreme Court in *Hill v. Yaskin,* 75 *N.J.* 139 (1977).

Defendant's motion for judgment was properly denied, as was his request that the jury be instructed in accordance with the *Krauth* rule.

The judgment under review is affirmed.