**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4677-16T3

E.R. and D.R.,

     Plaintiffs-Appellants,

v.

R.A.,

     Defendant-Respondent,

and

K.A. and N.A.,

     Defendants,

and

R.A.,

     Third-Party Plaintiff,

v.

SOUTHERN OCEAN MEDICAL CENTER,

     Third-Party Defendant.

_____

Argued September 25, 2018 – Decided October 24, 2018

Before Judges Yannotti, Rothstadt and Natali.

On appeal from Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-0613-14.

Louis N. Christos argued the cause for appellants (Law Offices of Harrison & Christos, attorneys; Louis N. Christos, on the brief).

Kevin F. Sheehy argued the cause for respondent (Leyden, Capotorto, Ritacco & Corrigan, PC, attorneys; Robert J. Ritacco, of counsel; Kevin F. Sheehy, on the brief).

PER CURIAM

Plaintiffs E.R. and D.R. appeal from an order of the Law Division dated April 4, 2017, which granted summary judgment in favor of R.A.[1] Plaintiffs also appeal from an order dated June 27, 2017, which denied their motion for reconsideration. For the reasons that follow, we reverse.

On March 7, 2012, after consulting with her parents, defendant voluntarily admitted herself to the Southern Ocean Medical Center (SOMC) seeking psychiatric treatment. It appears that in the days before her admission to SOMC, defendant had been hallucinating, experiencing paranoia, and engaging in

---

[1] We use initials to identify the parties to protect their privacy. For ease of reference, we refer to E.R. as plaintiff and R.A. as defendant.

delusional behavior. SOMC's protocols indicate that if an individual presents to the hospital after a psychiatric episode, the individual should be directed to the emergency room, where hospital staff should perform a medical screening.

Defendant was brought to SOMC's emergency room and placed in a cubicle between two other patients. After speaking with defendant, a crisis screener recommended that she seek an evaluation at Carrier Clinic (Carrier), an in-patient behavioral health center. Defendant discussed this recommendation with her mother. Eventually, she agreed to admit herself to Carrier for treatment.

Defendant waited at SOMC while hospital staff made arrangements for her admission to Carrier. During that time, defendant exhibited signs of emotional distress. According to her mother, defendant became increasingly agitated, anxious, and frustrated. It appears that she may have been troubled because she was required to wear a short hospital gown without any underwear.

At approximately 10:30 p.m., defendant became increasingly upset and delusional. She started to raise her voice and said she believed someone was spying on her. In addition, a loud, intoxicated woman was placed in the next cubicle, which apparently made defendant even more upset. Defendant's mother approached the nurse's station and requested medication to calm her daughter,

which a nurse provided. Initially, defendant was hesitant to take the medication, believing it would not be helpful, but her mother convinced her to take the medication.

Defendant remained in the emergency room for several hours, and her mother repeatedly asked when she would be transferred to Carrier. Defendant became very agitated. Her mother asked for additional medication for defendant, and a nurse provided the medication. Defendant refused to take the medication, explaining that she was familiar with the medication and did not believe it would be helpful.

At approximately 1:35 a.m., three nurses and a security guard approached defendant and her mother and told defendant's mother to leave and go to the waiting room. Hospital records do not indicate why this decision was made, but defendant's mother testified that staff decided she should go to the waiting room because they believed she had taken medication and placed it in her pocket.

Hospital records indicate that, after defendant's mother was removed, defendant became extremely angry and combative. Defendant testified that she was shocked when hospital staff made her mother leave without providing an explanation. Through a window, defendant's mother observed hospital staff wheel defendant down a hallway. Defendant was unrestrained. She was yelling

and waving her arm. The staff members brought defendant to a private room. Defendant testified that, when one of the male staff members began to grab her knees and place them in restraints, she feared she was being sexually assaulted.

Plaintiff is an emergency room technician at SOMC and a member of the team that wheeled defendant down the hallway and took her to the private room. He testified that his job requires him to "assist with patient safety" and "patient care." He further testified that he has had to restrain patients "a lot of times" in his career, and that he does this "[w]hen a patient is out of control," primarily to ensure the patient does not hurt his or herself or others.

Plaintiff first observed defendant earlier in the evening sitting on a stretcher in the hospital, accompanied by another woman. Later, before he was called to move defendant to the private room, plaintiff did not recall defendant engaging in any abnormal or violent behavior. However, based on where hospital staff had placed her, plaintiff thought defendant was likely a psychiatric patient.

After the team moved defendant to the private room, a physician ordered the team to restrain her so she could be medicated by injection. Plaintiff attempted to restrain defendant's upper body. At that point, defendant bit plaintiff's hand, severing a portion of his finger. Apparently in shock, defendant

stopped resisting and acknowledged what she had done. The staff then injected defendant with a sedative.

Sometime later, defendant was charged with criminal assault. She retained private legal counsel, who referred her to Edward Baruch, M.D., for a psychiatric evaluation. Dr. Baruch performed the evaluation on December 11, 2012. The report of this evaluation was not submitted to the trial court in this case.

On August 13, 2013, defendant pled guilty to aggravated assault, contrary to N.J.S.A. 2C:12-1(b)(7). A person is guilty of this offense if he or she "[a]ttempts to cause significant bodily injury to another or causes significant bodily injury purposely or knowingly or, under circumstances manifesting extreme indifference to the value of human life recklessly causes such significant bodily injury[.]" Ibid. When defendant pled guilty to the charge, she admitted that while plaintiff was treating her, she recklessly caused him significant bodily injury by biting off the tip of his finger.

In May 2016, Dr. Baruch performed a second psychiatric evaluation of defendant. In his report, Dr. Baruch stated that at the time of her admission to SOMC, defendant was "gross[ly] psychotic, paranoid, severely anxious and delusional." He stated that defendant's action of biting the worker's finger was

a single episode of "out of character behavior, which was secondary to mixed manic/depressive, sleep-deprived, agitated, hypervigilant, paranoid, and delusional state." He opined that at the time, defendant was "not in her right mind, [and] she was clinically insane."

In March 2014, plaintiff filed a complaint in the Law Division against defendant and her parents, asserting claims of negligence and intentional assault. Plaintiff's spouse also asserted a claim, alleging that as a result of defendants' actions, she suffered a loss of her husband's comfort, companionship, consortium, and society.

Following discovery, defendants filed motions for summary judgment. After hearing oral arguments, the court granted summary judgment in favor of defendants. Thereafter, plaintiffs filed a motion for reconsideration of the order granting summary judgment to R.A. The judge denied the motion. This appeal followed.

On appeal, plaintiffs argue that the trial court erred by granting R.A.'s motion for summary judgment. Plaintiffs contend there are genuine issues of material fact as to whether defendant was mentally incompetent at the time she assaulted plaintiff. When reviewing a trial court's order granting summary judgment, we apply the same standard that the trial court applies in ruling on the

7

motion.  Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998).

The trial court may grant a motion for summary judgment when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995). "An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact."  R. 4:46-2(c).

In granting summary judgment to defendant, the motion judge determined that defendant did not owe plaintiff a duty of care because at the time she assaulted him, she was mentally incompetent.  In making that decision, the judge relied upon Berberian v. Lynn, 179 N.J. 290 (2004).  In Berberian, the defendant was an institutionalized patient who suffered from senile dementia, Alzheimer's type, and he was transferred from a long-term-care unit to the geriatric psychiatric unit because he had become increasingly agitated and assaultive towards the facility's staff.  Id. at 292.

The plaintiff was the nurse supervisor in the long-term care unit, and she had extensive experience dealing with Alzheimer's patients.  Id. at 293.  The

plaintiff knew the defendant had a history of agitation and prior violent acts with staff. Ibid. One day, the defendant tried to depart using the fire exit and he set off the alarm. Ibid. One of the staff members tried to redirect the defendant, and he began to strike her. Ibid. When the plaintiff approached the defendant and reached out toward him, the defendant "grabbed [the] plaintiff's hand, pulled her toward him and then pushed her back, causing her to fall and fracture her right leg." Ibid.

The plaintiff filed suit, alleging that the defendant negligently, recklessly, and carelessly struck her without provocation. Ibid. The Court held "that a mentally disabled patient, who does not have the capacity to control his or her conduct, does not owe his or her caregiver a duty of care." Id. at 302. The Court noted that the defendant had been declared mentally incompetent by a probate court, and there was no dispute that he did not have the mental capacity to appreciate the consequence of his conduct. Ibid.

The Court also noted that there was no concern that the defendant was "feigning his symptoms." Ibid. The Court stated that most important was the fact that the defendant had been "involuntarily admitted to [the hospital] to prevent the very type of injury that is at the center of this lawsuit." Ibid.

In addition, the Court observed that the plaintiff knew that the defendant had the potential for engaging in violent acts and she was trained to enlist the assistance of security personnel when necessary. Ibid. The plaintiff had the ability to adjust her conduct to deal with the foreseeable harm. Ibid. The Court held that under the circumstances, it would not be fair to impose a duty of care upon the defendant. Ibid..

The Court noted that the caregiver's situation raised concerns similar to those underlying the fireman's rule. Id. at 303. When a fireman chooses the profession, he accepts the risks engendered by another person's negligence in causing a fire. Ibid. (citing Krauth v. Geller, 31 N.J. 270, 273-74 (1960)). Similarly, a professional caregiver "willingly accepts the risk engendered by another's poor mental health." Ibid.

Here, the motion judge found that there was no genuine issue of material fact as to defendant's mental competency at the time of the incident. We are convinced, however, that there is a genuine issue of material fact as to whether defendant was mentally incompetent when she assaulted plaintiff.

It is undisputed that defendant presented to the SOMC after experiencing mental disturbances, and she was classified as a psychiatric patient. She was agitated and paranoid, but at times she was coherent and in control of her

actions. As noted previously, defendant voluntarily agreed to go to SOMC for treatment. She also voluntarily agreed to the transfer to Carrier and initially refused to take certain medications.

Furthermore, defendant subsequently pled guilty to aggravated assault and, when doing so, admitted that her conduct was reckless. Defendant's admission is not conclusive proof that she was mentally competent when she assaulted plaintiff. Eaton v. Eaton, 119 N.J. 628, 644 (1990). However, the plea is an admission, and the "party who has entered the plea may rebut or otherwise explain the circumstances surrounding the admission." Ibid.

Defendant argues that her admission that she acted recklessly when she assaulted plaintiff is irrelevant. She contends plaintiffs have alleged she acted intentionally or negligently, and they have not alleged that she acted recklessly. Defendant's admission does, however, support an inference that she was mentally competent at the time she assaulted plaintiff.

Moreover, unlike the circumstances in Berberian, a court had not declared defendant mentally incompetent and she was not involuntarily committed at SOMC. Defendant contends that Berberian does not require an adjudication of incompetency and involuntary commitment. We agree, but the fact that a court had not declared defendant mentally incompetent and the fact that she was not

involuntarily committed at SOMC is probative evidence that would support a finding that defendant was mentally competent when she assaulted plaintiff. Defendant notes that she was involuntarily restrained at SOMC; however, the use of restraints is not the same as an involuntary commitment.

In addition, there is evidence that defendant's violent act may have been the result of a variety of stressful factors, including the recent break-up with her boyfriend; the lack of sleep; waiting for hours at SOMC for the transfer to Carrier; placement in the emergency room with a disruptive, intoxicated person; being separated from her mother; and the placement of restraints. Even so, defendant may have had the mental capacity to control her actions.

We recognize that Dr. Baruch has issued a report, in which he concludes that when defendant was admitted to SOMC she was "grossly psychotic, paranoid, severely anxious and delusional." He opined that at the time defendant bit plaintiff's finger, she "was clinically insane." Dr. Baruch's opinion is evidence that defendant was not mentally competent at the time of the incident. However, in light of the other evidence presented, Dr. Baruch's opinion it is not conclusive. A trier of fact is not required to accept expert testimony, even if unrebutted. Akhtar v. JDN Properties at Florham Park, 439 N.J. Super. 391, 402 (App. Div. 2015).

In sum, viewing all of the evidence submitted to the trial court in a light most favorable to plaintiffs, there is a genuine issue of material fact as to whether defendant was mentally competent at the time she assaulted plaintiff. We are convinced the evidence was not so "one-sided" that defendant was entitled to prevail as a matter of law on the issue of her mental incompetency. Brill, 142 N.J. at 536 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). Therefore, the trial court erred by granting defendant's motion for summary judgment.

Reversed and remanded to the trial court for further proceedings in conformity with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4677-16T3